<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ZACHARY SCHER, | |
| Plaintiff, | Civil Action No. 19-16077 (MAS) (ZNQ) |
| v. | **MEMORANDUM OPINION** |
| MICHAEL J. SHERMAN, et al., | |
| Defendants. | |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court upon Defendant Michael Sherman ("Sherman") and Defendant Chelsea Gilbert's ("Gilbert") (collectively, "Defendants") Motions to Dismiss (ECF Nos. 43, 44) Plaintiff Zachary Scher's ("Plaintiff") Amended Complaint. Plaintiff opposed. (ECF Nos. 46, 47.) Sherman has also moved to sanction Plaintiff pursuant to Federal Rule of Civil Procedure 11. (ECF No. 51.) Plaintiff also opposed that Motion. (ECF No. 52.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Defendants' Motions to Dismiss are granted and Sherman's Motion for Sanctions is denied.

I.   **BACKGROUND**[1]

In December of 2018, Plaintiff entered into a contract for the purchase of video game currency from a non-party to this suit, Satya Mason ("Mason"), for an agreed upon price of $7,425.

---

[1] For the purposes of a motion to dismiss, the Court accepts as true and summarizes the factual allegations of the Amended Complaint. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

(Am. Compl. ¶ 11, ECF No. 40.) Plaintiff maintains that he transferred payment to Mason through his father's Paypal account and that Mason then sent Plaintiff the video game currency. (*Id.* ¶¶ 11-17.) Once Plaintiff's father "discover[ed] the unfamiliar transactions," however, "[P]laintiff's father disputed the transactions with Paypal, whom Plaintiff believes, charged back the funds to Mason." (*Id.* ¶ 18.) The Amended Complaint posits that "the charge back caused Mason's Paypal account to be suspended." (*Id.* ¶ 19.) Despite initially disputing the transaction with Paypal, Plaintiff represents to the Court that by February 7, 2019, his father "directed Paypal to allow the charges to process." (*Id.* ¶¶ 20-21.) The Amended Complaint does not, however, specify precisely when Plaintiff's father instructed Paypal to allow the charges to process. Plaintiff asserts that he "is no longer in possession" of the funds, although he does not know whether "Mason ever received the funds from Paypal in light of Mason's account suspension." (*Id.* ¶¶ 21-22.)

On or about February 7, 2019, Defendants sent Plaintiff a demand letter ("the Demand Letter") on behalf of Mason, under the name Dash and Associates, Inc. ("Dash"). (*Id.* ¶ 23; *see also* Demand Letter, Ex. A to Am. Compl., ECF No. 40-1.) The Demand Letter represented itself as coming from Dash's "Litigation Department." (Demand Letter 1.) The letter was the initial and only communication sent to Plaintiff. (Am. Compl. ¶ 27.) It accused Plaintiff of "certain acts of fraud, including bank fraud and wire fraud, that [Plaintiff] conducted against Mr. Mason in order to convert several thousand dollars' worth of an online video game currency." (Demand Letter 1.) According to the letter, after Plaintiff agreed to purchase the currency, the payment was reversed, apparently upon Plaintiff's father's instructions. (*Id.*) In important respects, however, the Demand Letter's allegations diverge from the Amended Complaint's factual representations. The Demand Letter asserts that after Plaintiff's father reversed the payment, Plaintiff "attempted to ingratiate [him]self to Mr. Mason," including by suggesting to him "that there were other 'customers' who

2

would be interested in making transactions through Mr. Mason on more or less the same terms." (*Id.*) The Demand Letter further alleges that "[o]n January 9[th], [Plaintiff] referred another such 'customer' to Mr. Mason, who engaged in a similar transaction process with Mr. Mason where this 'customer' (who [Dash is] more or less certain is also [Plaintiff]) offered to pay Mr. Mason for $3,375 worth of the [c]urrency. This 'customer' promptly disappeared without ever paying in the [c]urrency, keeping the [c]urrency and simply disappearing." (*Id.* at 1-2.) "The very next day," according to the Demand Letter, "[Plaintiff] reversed the initial . . . payment without explanation." (*Id.* at 2.) While the letter accuses Plaintiff of using a fictitious "customer" persona to abscond with the currency, the letter makes no assertion about whether Mason ever received the payments reversed by Plaintiff's father.

The letter goes on to accuse Plaintiff of several civil and criminal violations, including "acts of fraud, theft, and conversion." (*Id.* at 2.) It also demands payment of $7,725, reflecting the combined amount of money Plaintiff allegedly stole from Mason, "together with [Mason's] legal fees to-date in this matter." (*Id.*) The letter represented that it was Mason's "sole pre-litigation demand," reflecting his interest in "resolving this matter" in lieu of "retaining a litigator . . . to file a civil lawsuit with the applicable civil court of New Jersey and escalating [Mason's] complaints regarding [Plaintiff's] various criminal acts to the applicable authorities." (*Id.*)

Plaintiff alleges that the Demand Letter violated the Fair Debt Collection Practices Act ("FDCPA"). (Am. Compl. ¶¶ 51-55.) Plaintiff maintains that under the FDCPA, he is a consumer, Defendants are debt collectors, the Demand Letter is a communication, and the Demand Letter represents an attempt by Defendants to collect a debt. (Am. Compl. ¶¶ 13, 24-25.) According to Plaintiff, while the Demand Letter was printed on Dash letterhead that purported to come from its "Litigation Department," Dash is not a law firm. (Demand Letter 1; Am. Compl. ¶¶ 30-31.) But

3

based on the letterhead, which lists a number of individuals as "of counsel" at Dash,[2] and the fact that the letter was signed by "Christopher Ray, ESQ" ("Ray"), Plaintiff argues that "[t]o the least sophisticated consumer, Dash appears to be a law firm." (*Id.* ¶¶ 31-33; *see also* Demand Letter 3.) Plaintiff maintains that Ray only "wrote and signed the Demand Letter at the direction of Sherman." (Am. Compl. ¶ 43.) Plaintiff asserts that Sherman is "not licensed to practice law" in either "the State of New Jersey where Dash sent the letter," or the state of New York, where Dash is located, according to Dash's letterhead. (*Id.* ¶¶ 28-29.) Nor is Gilbert, another Defendant allegedly involved in mailing the letter, licensed to practice law in either New York or New Jersey, according to Plaintiff. (*Id.* ¶¶ 28, 44.) As to the individuals listed as "of counsel" on the letterhead, Plaintiff asserts that the individual listed as "John Anthony, Esq." was "John Anthony Benemerito, Esq." ("Benemerito"). (*Id.* ¶ 39.) Benemerito was "falsely included" on the Dash letterhead by Sherman.[3] (*Id.* ¶¶ 39, 41.) Plaintiff asserts that at all relevant times, Sherman controlled the Dash and Associates letterhead. (*Id.* ¶ 40.)

Plaintiff takes issue with both Dash as a corporate entity and its website. The Demand Letter references a website for Dash with a URL of www.dashandassociates.com and identifies the website owners as "Dash and Associates, Inc." (*Id.* ¶¶ 34-35.) Plaintiff alleges that there is no corporation called "Dash and Associates, Inc." and that the "fictitious name is an alter ego of the [D]efendants." (*Id.* ¶ 36.) Furthermore, Plaintiff maintains that Defendants "are not licensed to operate a collection agency in New Jersey." (*Id.* ¶ 45.) On February 11, 2019, the website contained a "Founders/Attorney Bios" page that featured eight photographs with names and descriptions of

---

[2] Gilbert is listed on the letterhead as "Settlements Lead." (Demand Letter 1.)

[3] Benemerito and several other individuals were previously dismissed from this action after providing affidavits indicating that they were not involved in the preparation or mailing of the Demand Letter. (Am. Compl. ¶ 42.)

Defendants, including Gilbert, Benemerito, and Ray. (*Id.* ¶ 38.) Plaintiff alleges that Benemerito's partial name was "falsely included" on the website. (*Id.* ¶ 41.) Plaintiff also provides the Court with language on the website directed to prospective clients who might purchase Dash's Demand Letter services. (*Id.* ¶ 56.) The text addressed the question "[d]oes it matter if the licensed attorney is in my area?" (*Id.*) According to the website,

> [t]his is a very interesting question and contrary to conventional thinking, the answer is no. No, it doesn't matter. Most recipients are blinded by simply having received the letter and if the case is serious enough, if the letter is filled with hard facts, if the recipient knows your [sic] ready to sue them . . . the location of the attorney makes absolutely no difference in the outcome of your case.

(*Id.* (alterations in the original).) Plaintiff alleges that "at all relevant times[,] Sherman controlled the [w]ebsite." (*Id.* ¶ 40.)

On July 30, 2019, Plaintiff filed a Complaint alleging three counts against Defendants: Count One, for violations of the FDCPA, Count Two, for common law fraud, and Count Three, for common law negligence. (ECF No. 1.) On March 31, 2020, the Court dismissed Plaintiff's Complaint without prejudice. (ECF No. 39.) On April 21, 2020, Plaintiff filed an Amended Complaint alleging two counts against Defendants: Count One, unlawful debt collection practices in violation of the FDCPA and Count Two, common law negligence. (ECF No. 40.) Defendants now move to dismiss the Amended Complaint. (ECF Nos. 43, 44.)

## II.   LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(6)[4]

A claim may be dismissed under Rule 12(b)(6) if the plaintiff can prove no set of facts in support of the claim that would entitle her to relief. District courts undertake a three-part analysis

---

[4] All references to a "Rule" or "Rules" refer to the Federal Rules of Civil Procedure, unless otherwise noted.

when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)) (alteration in original). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[M]ere restatements of the elements of [a] claim[ ] . . . are not entitled to the assumption of truth." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (alterations in original) (quotation and citation omitted). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

"Rule 12 prohibits the court from considering matters outside the pleadings in ruling on a motion to dismiss for failure to state a claim . . . and a court's consideration of matters outside the pleadings converts the motion to a motion for summary judgment." *Kimbugwe v. United States*, No. 12-7940, 2014 WL 6667959, at *3 (D.N.J. Nov. 24, 2014). "[A]n exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted) (internal quotation marks omitted). Notwithstanding these principles, courts may not consider allegations raised for the first time in a plaintiff's opposition to a motion to dismiss. *See Pennsylvania ex rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be

6

amended by the briefs in opposition to a motion to dismiss." (citation omitted) (internal quotation omitted)).

## III.   **DISCUSSION**

### A.   **Fair Debt Collection Practices Act Claim**

To prevail on an FDCPA claim, a plaintiff must prove that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014). The term "debt" means "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

The Third Circuit adheres to a three-part test to determine what amounts to a "debt" under the FDCPA. *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 358-61 (3d Cir. 2018). First, the court considers whether the underlying obligation "arises out of a transaction" or whether, instead, it "arises by virtue of a legal status." *Id.* at 360; 15 U.S.C. § 1692a(5). The Third Circuit defines a transaction as "a consensual exchange involving an affirmative 'request' and the rendition of a service of purchase of property or other item of value." *Id.* (quoting *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 400 (3d Cir. 2000); *Staub v. Harris*, 626 F.2d 275, 278 (3d Cir. 1980)). An obligation arises by virtue of a legal status when there is "an involuntary obligation attendant to the fact of having a specific legal status such as that of a property owner, legal resident, or tortfeasor or other type of offender under criminal or civil law." *Id.* (citing *Pollice*, 225 F.3d at 401; *Staub*, 626 F.2d at 278; *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1168 (1987)).

7

Attempts to collect on obligations that arise out of tortious acts are not prohibited by the FDCPA. *Zimmerman*, 834 F.2d at 1168 ("Nothing in the statute or its legislative history leads us to attribute to Congress a purpose to protect against a perceived problem with the use of abusive practices in collecting tort settlements from alleged tortfeasors through threats of legal action."). Second, if the obligation arises out of a transaction, the court identifies "what is being rendered in exchange for the monetary payment." *St. Pierre*, 898 F.3d at 361. Finally, the court considers "the characteristics of that money, property, insurance, or services to ascertain whether they are 'primarily for personal, family, or household purposes.'" *Id.* (quoting 15 U.S.C.§ 1692a(5)).

Here, the Court finds that Plaintiff's FDCPA claim fails because Defendants' challenged conduct was not an attempt to collect a "debt" within the meaning of the FDCPA. Rather, on its face, Defendants' February 2019 Demand Letter appears to be an attempt to collect a tort settlement with an alleged tortfeasor.

*Zimmerman* is instructive. In that case, HBO hired a firm to launch an "anti-theft campaign" against individuals who had allegedly obtained cable services without paying for them. 834 F.2d at 1165-66. The firm sent letters demanding payment from individuals who had allegedly stolen services from HBO. *Id.* The demand letters included assertions that the individuals were in violation of various statutes and discussed possible legal consequences for the failure to remit payment. *Id.* The Third Circuit affirmed the district court's dismissal of the action for failure to state a claim under the FDCPA. *Id.* at 1171. According to the Third Circuit, the obligation for which HBO demanded payment did not arise from "transactions" as defined by the FDCPA, but instead arose from plaintiff's alleged tort liability. *Id.* at 1168-69; *see also Pollice*, 225 F.3d at 401 n.24 ("Clearly, there was no 'debt' in *Zimmerman*, because the obligation arose out of theft rather than a 'transaction.'"), *abrogated on other grounds by Henson v. Santander Consumer USA, Inc.*,

8

137 S. Ct. 1718 (2017). In affirming the dismissal of the action, the Third Circuit "indicated that the FDCPA was intended to protect those who have 'contracted for goods or services and are unable to pay for them,' and that the statute was *not* intended to 'protect against a perceived problem with the use of abusive practices in collecting tort settlements from alleged tortfeasors through threats of legal action.'" *Pollice*, 225 F.3d at 401 n.24 (emphasis added) (quoting *Zimmerman*, 834 F.2d at 1168).

Similarly, in *Beauvoir v. Israel*, the Second Circuit reviewed a trial court's grant of a motion to dismiss FDCPA claims. In their FDCPA action, the *Beauvoir* plaintiffs sought damages for alleged violations of the FDCPA arising from demand letters accusing them of stealing unmetered natural gas. *Beauvoir v. Israel*, 794 F.3d 244, 245 (2d Cir. 2015). The Second Circuit held that "money owed as a result of theft is not an 'obligation or alleged obligation of a consumer to pay money arising out of a transaction' and therefore, does not constitute a 'debt' for purposes of the FDCPA." *Id.* at 247 (quoting 15 U.S.C. § 1692a(5)). The Second Circuit was careful to note that its affirmance of the district court's dismissal did "not mean that we accept the allegation of theft as true." *Id.* at 248. "[T]he [c]ourt need not determine whether the [plaintiffs] are or are not actually liable . . . for theft. What matters in the context of an FDCPA claim is the asserted basis for the obligation to pay." *Id.* (internal quotations omitted). The Second Circuit concluded that while "a defendant may not evade the protections of the FDCPA merely by framing the basis of the alleged obligation in terms of theft or tort[,]" by the same token, however, "a plaintiff may not impose the burdens of the FDCPA on an obligation outside the scope of the statue." *Id.* (citations omitted).

Similar to *Zimmerman* and *Beauvoir*, the Demand Letter at issue in this case clearly asserted that Plaintiff's obligation to pay arose from theft and other alleged torts. According to the

letter, Plaintiff engaged in "certain acts of fraud, including bank fraud and wire fraud . . . in order to convert several thousand dollars worth of an online video game currency." (Demand Letter 1.) The letter goes on to allege that after Plaintiff agreed to purchase the video game currency, Plaintiff's father contacted Paypal and "reversed" the payment. (*Id.* (alleging that when confronted about the payment cancellation, Plaintiff "alleged that [his] father had ordered the chargebacks").) Plaintiff appears to acknowledge receiving the video game currency, even though his father later cancelled the payment. (Am. Compl. ¶ 16 ("Mason transferred the video game currency to [P]laintiff").) Furthermore, the letter asserts that Plaintiff later used a fictious online persona who offered to pay for $3,375 worth of video game currency, but then "promptly disappeared without ever paying for the [c]urrency, keeping the [c]urrency." (Demand Letter 1-2.) According to the Letter, "[t]he very next day, [Plaintiff] reversed the initial $4,049 payment without explanation. When confronted about it, [Plaintiff] simply denied that [he] had initiated the dispute despite the unambiguous paper trail demonstrating as much. [Plaintiff has] since ceased corresponding" with the seller of the video game currency. (*Id.* at 2.) The letter describes itself as a "pre-litigation demand" and threatens "a civil lawsuit with the applicable civil court of New Jersey." *Id.*

Accordingly, the Court finds that the February 2019 Demand Letter does not attempt to collect a "debt" that arose out of a transaction, but rather attempts to settle a civil claim arising by virtue of Plaintiff's legal status as an alleged tortfeasor. As the Third Circuit found in *Zimmerman*, "the FDCPA was intended to protect those who have 'contracted for goods or services and are unable to pay for them,' and that the statute was not intended to 'protect against a perceived problem with the use of abusive practices in collecting tort settlements from alleged tortfeasors through threats of legal action.'" *Pollice*, 225 F.3d 379, 401 n.24 (quoting *Zimmerman*, 834 F.2d at 1168). The Court does not reach the question of whether or not Plaintiff actually committed the

torts alleged in the Demand Letter. But just as debt collectors may not "evade the protections of the FDCPA merely by framing the basis of the alleged obligation in terms of theft," *Beauvoir*, 794 F.3d at 248, plaintiffs facing bona fide tort claims may not shield themselves from liability using the FDCPA. "Insofar as defendants may have overreached in their accusations and efforts to collect money in settlement of their claims, the plaintiff's remedy is elsewhere than under the FDCPA." *Zimmerman*, 834 F.2d at 1169.

### B.     Rule 11 Sanctions

Sherman also asks the Court to impose sanctions on Plaintiff under Rule 11. (Sanctions Moving Br., ECF No. 51.) According to Sherman, "Plaintiff's Complaint contains numerous claims that are untrue and lack any evidentiary support. And for many of these claims, Plaintiff does not even attempt to offer any evidence." (*Id.* at 4.) Sherman maintains that he "did not author the [D]emand [L]etter and [his] name does not appear anywhere on the [D]emand [L]etter." (*Id.*) Sherman argues that "[w]ithout any connection between Defendant Sherman and the [D]emand [L]etter and any evidentiary support that Defendant Sherman regularly collects debts, Plaintiff's Complaint is clearly in violation of Rule 11 by failing to back up material claims with evidentiary support." (*Id.* at 5.) Sherman represents to the Court that "Plaintiff's counsel has made it clear through correspondence that it is his goal to destroy Defendant Sherman and his companies. The Complaint has been filed for no purpose other than to harass Defendant Sherman and intimidate Defendant Sherman in order to extort money from the Defendant." (*Id.* at 6.) For his part, Plaintiff maintains that "[u]nder the circumstances, there is both a factual and legal basis for the claims set forth in both the original and amended complaints. The suggestion or inference that Plaintiff or its counsel filed either the original or the amended complaint without making an objectively reasonable investigation is ludicrous." (Pl.'s Sanctions Opp'n Br. 8, ECF No. 52-2.)

Rule 11 requires that all submissions to the Court must be "warranted by existing law or a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). The Rule "authorizes imposition of sanctions upon the signer of any pleading, motion or other paper that was presented for an improper purpose." *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir. 1995). Bad faith is not required for a sanction to be appropriate. *Id.* The Rule "imposes an obligation on counsel and client analogous to the railroad crossing sign, 'Stop, Look and Listen.' It may be rephrased, 'Stop, Think, Investigate, Research' before filing papers." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987).

The test for whether a Rule 11 motion should be granted is objective reasonableness under the circumstances. *Bus. Guides, Inc. v. Chromatic Communs. Enters., Inc.*, 498 U.S. 533, 550-51 (1991). The Third Circuit defines reasonableness as "'objective knowledge or belief at the time of the filing of the challenged paper' that the claim was well-grounded in law and fact." *Magerman v. Mercer*, No. 17-3490, 2018 WL 684806, at *3 (E.D. Pa. Feb. 2, 2018) (quoting *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991)). "An attorney can be sanctioned for both bad faith, negligence, and 'to some extent, . . . professional incompetence.'" *Shenango Inc. v. Massey Coal Sales Co.*, No. 08-199, 2009 WL 2901296, at *6 (W.D. Pa. Sept. 10, 2009) (quoting *Gaiardo*, 835 F.2d at 482).

The Third Circuit has also warned that "the target is abuse—the Rule must not be used as an automatic penalty against an attorney or a party advocating the losing side of a dispute." *Gaiardo*, 835 F.2d at 482. Rule 11 is intended to impose sanctions "only in the 'exceptional circumstance' where a claim or motion is patently unmeritorious or frivolous." *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988) (internal citation omitted). "And even where such exceptional circumstances exist, the court is merely authorized, not

12

required, to impose sanctions." *Gonzalez v. Busy Place Early Learning Ctr.*, No. 14-6349, 2015 WL 5679887, at *5 (D.N.J. Sept. 25, 2015).

After careful review of the filings, the Court is not persuaded that Plaintiff's claims were so frivolous as to warrant sanctions and, therefore, denies Sherman's Motion. The Amended Complaint alleges that the Demand Letter's attorney signatory "wrote and signed the Demand Letter at the direction of Sherman." (Am. Compl. ¶ 43.) Additionally, Plaintiff alleges that it was Sherman who "mailed the Demand Letter" to Plaintiff. (*Id.* ¶ 44.) The Amended Complaint also alleges that Sherman "controlled" the website and Dash's letterhead. (*Id.* ¶ 40.) Contrary to Sherman's claim that Plaintiff makes "no attempt to tie these violations to Defendant Sherman," (Sanctions Moving Br. 5), Plaintiff alleges that Sherman was actively involved in drafting and sending the communications at issue in this case. Although Defendant Sherman denies any involvement with the Demand Letter, (Sanctions Moving Br. 4), he does not challenge Plaintiff's allegation that he is a part of "an unincorporated association doing business as Dash & Associates, The Office of Dash and Associates Litigation Department, and LetterDash, Inc." (Am. Compl. ¶ 10.) In this posture, the Court cannot find that Plaintiff lacked an objectively reasonable factual basis for joining Sherman in this action. Moreover, the Court finds that the Complaint makes a non-frivolous attempt to connect Defendants' alleged efforts to settle Mason's tort claims to the FDCPA definition of "debt collector." *See Tepper v. Amos Fin. LLC*, 898 F.3d 364, 365 (3d Cir. 2018) (construing the FDCPA's proscriptions as applying to "those whose principal purpose is the collection of any debts, and those who regularly collect debts owed another"). The Court, accordingly, finds that Plaintiff's claims pass the objective reasonableness test. Although the Court will nevertheless dismiss Plaintiff's claims, the Court will not allow Rule 11 to "be used as an

automatic penalty against an attorney or a party advocating the losing side of a dispute." *Gaiardo*, 835 F.2d at 482.

### C.     The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's Negligence Claim

Because the Court dismisses Plaintiff's FDCPA claim, the Court declines supplemental jurisdiction over Plaintiff's remaining state common law negligence claim. *See* 28 U.S.C. § 1367(c)(3) (stating a district court "may decline to exercise supplemental jurisdiction over a claim" if "the district court dismissed all claims over which it has original jurisdiction"); *see also Petrossian v. Cole*, 613 F. App'x 109, 112 (3d Cir. 2015) ("[b]ecause the Court dismisse[s] all claims over which it ha[s] original jurisdiction, it ha[s] the authority to decline to exercise supplemental jurisdiction" over the remaining state-law claims).

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss are granted and Sherman's Motion for Sanctions is denied. The Court will enter an Order consistent with this Memorandum Opinion.

_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

14